Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 307
Facsimile: (415) 436-9683
lbelenky@biologicaldiversity.org

John Buse (CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue No. 3
Chicago, IL 60637
Telephone: (323) 533-4416
Fax: (610) 885-2187
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiff
Center for Biological Diversity

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES FISH AND WILDLIFE SERVICE and DIRK KEMPTHORNE, Secretary of the Interior, <br><br> Defendants. | Case No. **'07 CV 2380 JM AJB** <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> BY FAX |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# I. INTRODUCTION

1. The Secretary of the Interior ("Secretary") and the United States Fish and Wildlife Service ("Service") have violated the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), by failing to issue a legally sufficient designation of "critical habitat" for the arroyo toad (*Bufo californicus*). 16 U.S.C. § 1533(a)(3). This amphibian, native to coastal central and southern California, lost three-quarters of its historic range by 1994, thirteen years ago. A variety of threats, including those related to habitat degradation and destruction, continue to imperil this species. The final revised critical habitat rule in question was published on April 13, 2005 (70 Fed. Reg. 19562), and totaled 11,695 acres of protection. This miniscule amount pales in comparison to the previous final and proposed designations of 182,360 and 138,713 respectively. The amount is also a small fraction of the 104,699 acres identified by the agency as "essential to the conservation of the species." Numerous legal defects plague the final rule in question: (i) arbitrary identification of costs and benefits of critical habitat; (ii) illegal exclusions of habitat from the final designation; (iii) public participation irregularities and violations; (iv) unsupported definitions of "occupied" and "unoccupied" habitat; and (v) unlawful use of other plans to satisfy critical habitat obligations.

2. On July 20, 2007, the Service announced that it would review eight decisions made under the ESA, including the critical habitat designation for the arroyo toad, after questions were raised regarding improprieties by former Deputy Assistant Secretary for Fish and Wildlife and Parks Julie MacDonald who resigned May 1, 2007. On November 23, 2007, the Service stated that it had determined that revisions should be made to the decisions for seven of the species, including the critical habitat for the arroyo toad. Although the Service has already admitted that the final critical habitat designation must be revised, the Service has failed to put in place any interim measures to protect the arroyo toad and its habitat or to provide any timeline for providing a legally adequate critical habitat designation.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                            1

## II. JURISDICTION AND VENUE

3. Jurisdiction over this action is conferred by 16 U.S.C. § 1540(g) (citizen suit provision of the ESA); 28 U.S.C. §§ 1331 (Federal Question), 1346 (United States as defendant), 1361 (Mandamus), 2201 (Declaratory Judgment), and 2202 (injunctive relief); and/or 5 U.S.C. §§ 701 through 706 (APA) (judicial review provision of the APA).

4. Venue is properly vested in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).

5. Plaintiff provided a 60-day notice of intent to file this suit pursuant to the citizen suit provision of the ESA, 16 U.S.C. 1540(g)(2)(C), by letter to the Secretary and the Service dated and sent by certified mail and facsimile on August 28, 2007. Neither the Secretary nor the Service responded to that notice of intent to sue. For all claims, Plaintiff has exhausted all of the administrative remedies available to them.

## III. PARTIES

6. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a national, nonprofit organization with its main office in Tucson, Arizona and regional offices in San Diego, Los Angeles, Joshua Tree, and San Francisco, California. The Center's mission is to protect endangered species and wild places through science, policy, education, and environmental law. The Center has over 40,000 members, many of whom reside in California. The Center's members and staff regularly use, and will continue to use, arroyo toad habitat for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities. The Center's members and staff have and continue to research, study, observe, and seek protections for the arroyo toad and other species that depend on the same riparian habitat essential to the arroyo toad. The Center's members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of the arroyo toads in the wild. Defendants' violations of law are leading to the continued decline of arroyo toad populations and degradation of habitat currently and historically occupied by the arroyo toad, harming the Center's and its members' interests in the arroyo toad and its habitat. The Center brings this action on behalf of itself and its adversely affected members and staff.

7. The failure to properly designate critical habitat for the arroyo toad will hinder implementation of protective measures essential for the species' survival and recovery, and for the protection of habitat on which the arroyo toad relies. The Center's above-described biological health, cultural, educational, scientific, aesthetic, conservation and recreational interests have been, are being, and will continue to be adversely affected and irreparably injured by the failure to issue a legally sufficient critical habitat designation for the arroyo toad. Therefore, the Center, its members and staff have been and will continue to be irreparably damaged by the failure to properly designate critical habitat for the species.

8. Defendant DIRK KEMPTHORNE, is the Secretary of the Department of Interior. The Secretary of the Interior ("Secretary") is the federal official charged with responsibility for decisions regarding designations of critical habitat. He is sued in his official capacity.

9. Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("Service" or "FWS") is an agency of the United States government, and is an agency within and under the jurisdiction of the Department of the Interior. Through delegation of authority from the Secretary, the Service administers and implements the ESA, and is legally responsible for the designation and revision of critical habitat for the arroyo toad.

## IV. FACTS

10. The arroyo toad (*Bufo californicus*) is a small amphibian native to the coastal and mountainous regions of central and southern California. The arroyo toad was listed as endangered under the ESA on December 16, 1994. 59 Fed. Reg. 64859. By that time, over seventy-five percent (75%) of historic arroyo toad habitat had been lost. 66 Fed. Reg. 9421. Urban development, intensive agriculture, grazing, roads, water diversions, sand and gravel mining operations, reservoirs, increased predation from introduced aquatic species, and habitat degradation from introduced plant species all contributed to the decline in arroyo toads and continue to endanger the existence of the species today. 66 Fed. Reg. 9421; 69 Fed. Reg. 23257.

11. The ESA is a federal statute designed to protect endangered and threatened species so that they can recover to the point that they no longer require protection under the Act. Among the primary purposes of the ESA are to "provide a means whereby the ecosystems upon

which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." ESA § 2(b), 16 U.S.C. § 1531(b). "Conserve" and "conservation," as defined in the ESA, "mean to use and the use of all methods and procedures necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary." ESA § 3(3), 16 U.S.C. § 1532(3). To that end, the ESA requires that the Secretary designate areas of critical habitat for endangered species necessary for the conservation of the species in order to provide the habitat necessary to promote recovery of the species such that the protections of the ESA are no longer needed. ESA §§ 4(a)(3)(A), 3(5)(A) and (3), 16 U.S.C. §§ 1533(a)(3)(A), 1532(5)(A) and (3). "Critical habitat" means

> (i) the specific areas within the geographical area occupied by the species at the time it was listed in accordance with the provisions of section 1533 of this title, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
>
> (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 1533 of this title, upon a determination by the Secretary that such areas are essential for the conservation of the species.

ESA § 3(5)(A), 16 U.S.C. § 1532(5)(A). The Secretary must designate critical habitat "on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2). Section 4(b)(2) of the ESA provides that some areas may be excluded from designation as critical habitat based on economic considerations, but habitat may not be excluded from designation as critical habitat if the "failure to designate such area as critical habitat will result in the extinction of the species concerned." ESA § 4(b)(2), 16 U.S.C. § 1533(b)(2). Designated critical habitat is protected from adverse modification pursuant to Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2). The Secretary must also develop and implement recovery plans for the conservation and survival of endangered and threatened species. ESA § 4(f), 16

U.S.C. § 1533(f). The Secretary has delegated the authority to designate critical habitat and develop and implement recovery plans to the Service.

12. On July 24, 1999, the Service issued the Recovery Plan for the Arroyo Southwestern Toad ("Recovery Plan"), U.S. Fish and Wildlife Service, 1999. *See* 16 U.S.C. § 1533(f). The Recovery Plan provides a target of at least 35 self-sustaining populations or metapopulations of the arroyo toad on both federal and private lands before the species can be considered recovered such that it no longer requires the protections of the ESA. Recovery Plan at iv-v, 75-76. The Recovery Plan contemplated that, if it were fully implemented, recovery of the arroyo toad could be achieved by 2010. Recovery Plan at vi. "The recovery strategy for the arroyo toad is focused on providing sufficient breeding and upland habitat to maintain self-sustaining populations of arroyo toads throughout the historic range of the species in California, and minimizing or eliminating impacts and threats to arroyo toad populations." Recovery Plan at 67. "[S]everal human-related activities [] affect the hydrology of arroyo toad stream habitats and destroy or severely modify the dynamic nature of the riparian systems upon which arroyo toads depend for reproduction, development, and survival." Recovery Plan at 39. "These negative human activities include urbanization and agriculture within and adjacent to riparian habitats, dam building and the resulting reservoirs, water flow manipulations, sand and gravel mining, suction dredge mining, road placement across and within stream terraces, livestock grazing, off-highway vehicle use of roads and stream channels, the placement of campgrounds in arroyo toad habitat (especially on stream terraces), and the use of stream channels and terraces for other recreational activities." Recovery Plan at 39. In addition, exotic species of plants and animals can result in direct loss of arroyo toads through predation and indirect loss of arroyo toads through habitat degradation. Recovery Plan at 40.

13. Although required by Section 4 of the ESA to designate critical habitat for the arroyo toad at the time of listing, 16 U.S.C. § 1533(a)(3)(A), Defendants failed to do so. On March 4, 1999, the Center for Biological Diversity and Christians Caring for Creation filed suit to compel Defendants to designate critical habitat for seven species that had been listed under the ESA, including the arroyo toad. *Southwest Center for Biological Diversity, et al. v. USFWS, et*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                               5

*al.*, Civ. Case No. 99-CV-1003 WHA (N.D. Cal.). Pursuant to a settlement agreement, Defendants issued a proposed designation of critical habitat for the arroyo toad on June 8, 2000, consisting of 478,419 acres of habitat. 65 Fed. Reg. 36512-36548, 36523 (Table 2).

14. The Service designated critical habitat for the arroyo toad for the first time on February 7, 2001, consisting of 182,360 acres of habitat. 66 Fed. Reg. 9414-9474, 9420 (Table 2). On November 6, 2001, the Building Industry Legal Defense Foundation and other groups filed suit challenging the first critical habitat designation. *See Building Industry Legal Defense Foundation, et al. v. Norton*, 231 F. Supp. 2d 100, 102 (D.D.C. 2002). The Center for Biological Diversity and Defenders of Wildlife intervened as defendants in that suit. *See id.* The District Court for the District of Columbia ordered the final critical habitat designation for the arroyo toad issued on February 7, 2001 vacated, remanded the designation of critical habitat to the Service for reconsideration, and required that a new final designation be made no later than July 30, 2004. *See id.* at 108.

15. On April 28, 2004, the Service published a new proposed designation of critical habitat for the arroyo toad, consisting of 138,713 acres of habitat. Proposed Designation of Critical Habitat for the arroyo toad (*Bufo californicus*)("Proposed Rule"), 69 Fed. Reg. 23254-23288 (Apr. 28, 2004). The proposed critical habitat was divided into 23 Units. 69 Fed. Reg. 23258-9 (Table 2). The Proposed Rule failed to include many areas that are identified in the arroyo toad Recovery Plan that are essential to the recovery of the species. These areas include, but are not limited to, habitat in the following areas: the Upper Salinas River; Aqua Caliente in the Santa Ynez River basin; Aqua Blanca Creek, Bouquet Creek, Castaic Creek and Sespe Creek in the Santa Clara River basin; Arroyo Seco Creek in the Los Angeles River basin; Bell Canyon in the Aliso-San Onofre basin; Witch Creek and Otay River in the San Diego basin; Pine Valley Creek, Potretro Creek and La Posta Creek in the Cottonwood-Tijuana basin; and San Felipe Creek, Vallecitos Creek and Pinto Wash in the Salton Sea basin.

16. On June 25, 2004, the District Court for the District of Columbia granted the Service an extension of time, until March 31, 2005, to designate final critical habitat. On February 14, 2005, Service published revisions to the Proposed Rule, reopened the comment

period, and provided notice of the availability of a draft economic analysis of the designation of critical habitat for the arroyo toad. Proposed Designation of Critical Habitat for the Arroyo Toad (*Bufo californicus*) ("Revised Proposed Rule"), 70 Fed. Reg. at 7459-7467 (Feb. 14, 2005). The revisions to the proposed designation of critical habitat eliminated 9,514 acres of habitat. *See* Revised Proposed Rule, 70 Fed. Reg. 7463. The Service eliminated Unit 1 in its entirety, approximately 32% of Unit 6, and approximately 2.5% of Unit 22. *See* Revised Proposed Rule, 70 Fed. Reg. 7463. The Revised Proposed Rule revised the criteria used to identify essential upland and upstream habitat occupied by the arroyo toad and "truncated the upland habitat delineation." 70 Fed. Reg. 7461. The Revised Proposed Rule maintained the 82 foot (25 meter) elevation limit but reduced the distance from an essential stream from 4,921 feet (1,500 meters), to 1,640 feet (500 meters), such that critical habitat would extend no more than 1,640 feet from an essential stream if the 82 foot elevation limit had not been reached. 70 Fed. Reg. 19576. This revision was not based on any new scientific evidence but appears to have been imposed at the behest of Julie MacDonald for political reasons.

17. On April 13, 2005, the Service designated critical habitat for the arroyo toad for the second time, this time designating a total of 11,695 acres of arroyo toad habitat. Final Designation of Critical Habitat for the Arroyo Toad (*Bufo californicus*) ("Final Rule"), 70 Fed. Reg. 19562. The Final Rule eliminated 17 of the 23 Units identified in the Proposed Rule in their entirety and reduced the amount of habitat in five of the six Units where critical habitat was designated. *See* 70 Fed. Reg. 19577-8 (Table 1). The Final Rule designated only 11,695 acres as critical habitat of the 138,713 acres of habitat identified in the Proposed Rule, a reduction of over ninety-two percent (92%). *See* 70 Fed. Reg. 19,562, 19,577-78 (Table 1). The Final Rule contains no finding that the 11,695 acres of designated critical habitat are sufficient to provide for the conservation of the species, including recovery of the species. The Final Rule provides no scientific information or data to support a determination that the critical habitat designated is sufficient to promote recovery of the species.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF  7

18. The Service eliminated 80,374 acres of habitat pursuant to Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), with the justification that the economic cost of designation would outweigh the benefits. 70 FR 19593 (Table 3). .

19. All of Unit 1, 16,775 acres in Monterey County, was excluded under Section 4(b)(2) based primarily on the then-draft LRMP for Fort Hunter Liggett. The remaining approximately 73,599 acres of habitat that was excluded from the final critical habitat designation based on economic considerations under Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2). The habitat excluded from designation as critical habitat included extensive habitat within National Forests and other federal lands. Although the Secretary has some discretion to exclude areas from critical habitat based on economic considerations, he may not exclude any area from critical habitat if the "failure to designate such area as critical habitat will result in the extinction of the species concerned." ESA §4(b)(2), 16 U.S.C. § 1533(b)(2). Because Defendants' failure to designate sufficient critical habitat may result in the extinction of the species, Defendants improperly relied on Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), to exclude over 73,000 acres of arroyo toad habitat from designated critical habitat.

20. In the Final Rule, the Service improperly excluded habitat from designation as critical habitat for economic reasons that it concluded was essential to the conservation of the arroyo toad and which required special management, habitat which met the statutory definition of critical habitat. ESA §3(5)(A), 16 U.S.C. § 1532(5)(A). At the outset, in the Proposed Rule, the Service had excluded additional habitat from consideration as critical habitat that met the statutory definition, that is, habitat that the Service had concluded was essential to the conservation of the arroyo toad and which required special management as evidenced by the existing special management of these areas. In the Proposed and Interim Rules, the Service excluded essential habitat within Units 6, 13, 16, 17, 18, 19 and 22, because the habitat was within areas covered by the Western Riverside MSHCP, the Natural River Management Plan, the San Diego MSCP plan area, and the Rancho Las Flores Planned Community. Proposed Rule, 69 Fed. Reg. at 23,264, 23,265, 23,266; Interim Rule, 70 Fed. Reg. at 7464, 7465. In the Final Rule, the Service excluded additional essential habitat within the Orange County Central-Coastal

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                           8

Subregional Natural Communities Conservation Plan/Habitat Conservation Plan ("NCCP/HCP") and additional areas from the Western Riverside MSHCP claiming that "the benefits of excluding lands within these legally operative HCPs from the final critical habitat will outweigh the benefits of including them." 70 Fed. Reg. 19610. The Service excluded essential habitat in the North Ranch Policy Plan Area that is not covered by the Orange County Central-Coastal Subregional NCCP/HCP but which is covered by a conservation easement claiming that the "conservation easement provides adequate protection for arroyo toad habitat within this unit." 70 Fed. Reg. 19610. The Service excluded essential habitat within the area covered by the pending Coachella Valley MSHCP although that HCP has not yet been completed or implemented. 70 Fed. Reg. 19611-12. In the Final Rule, the Service also excluded 755 acres within the San Diego National Wildlife Refuge, a portion of Unit 18 managed by the Service for the protection of wildlife, from designation as critical habitat for economic reasons, although the Final Rule fails to describe any specific additional economic costs the Service would incur should these 755 acres be designated critical habitat. Final Rule, 70 Fed. Reg. At 19,607.

21. The Proposed Rule and the Final Rule differ enormously. Section 4(b)(5) of the ESA requires the Secretary to "publish a general notice and the complete text of the proposed regulation in the Federal Register." 16 U.S.C. § 1533(b)(5). Section 533 of the APA requires public notice to include "either the terms or substance of the proposed rule or a description of the subjects and issues involved," and requires the agency to give "interested persons an opportunity to participate in the rule making." 5 U.S.C. §553(b), (c). The Final Rule excluded over 92% of the essential habitat identified in the Proposed Rule, with over 73,000 acres excluded for economic reasons under Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2). Because neither the Proposed Rule nor the Interim Rule provide notice to the public of the Defendants' intent to exclude the vast majority of habitat essential for the conservation of the arroyo toad from designation as critical habitat for economic reasons, Defendants violated the notice provisions of the ESA and the APA.

22. The Final Rule fails to ensure that the designated critical habitat, consisting of 11,695 acres, is sufficient to conserve the species. Because Defendants failed to designate

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF               9

sufficient critical habitat to conserve the species, Defendants violated Section 4(a)(3) of the ESA. 16 U.S.C. § 1533(a)(3).

23. Defendants' failure to designate sufficient critical habitat to conserve the species will impair implementation of the Recovery Plan. Therefore, Defendants' designation is also contrary to their duty to implement the Recovery Plan as set forth in Section 4(f) of the ESA. 16 U.S.C. § 1533(f).

24. Under Section 4(b)(2) of the ESA, the Secretary "may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned." 16 U.S.C. § 1533(b)(2). Because the failure to designate sufficient critical habitat may result in extinction of the species, Defendants violated the Act by excluding habitat necessary to the survival of the species from the Final Rule pursuant to Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2).

25. Throughout the process of designating critical habitat for the arroyo toad, the Service relied on a regulatory definition of "destruction or adverse modification" of critical habitat that has been repeatedly declared invalid. *See* 50 C.F.R. § 402.02. In *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Service*, 378 F.3d 1059, 1069-70 (9th Cir. 2004), the Ninth Circuit Court of Appeals determined that the regulation improperly eliminated the recovery goal and benefit from critical habitat designation. The Service has, to date, failed to revise the regulation. As a result, Defendants relied on invalid criteria to calculate benefits of critical habitat designation. Defendants failed to properly identify and analyze the benefits of designating critical habitat before weighing the costs and benefits necessary to justify the exclusion of habitat from critical habitat designation pursuant to Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2). Therefore, Defendants acted in violation of Section 4(b)(2) of the ESA. 16 U.S.C. § 1533(b)(2).

26. The Service ignored potential benefits to the species that result from designation of critical habitat that are not provided by listing alone. In addition, the Service did not evaluate

benefits to other species, ecosystems, and the human environment provided by the potential non-consumptive uses of essential habitat areas that would be enhanced by critical habitat designation, such as protecting water quality, protecting other river dependant species including riparian flora and fauna, protecting soil quality, and protecting open space. The Service also failed to evaluate the potential economic benefits and savings associated with critical habitat designation to public health and local communities. In addition, the Service failed to evaluate the economic benefits and savings that would accrue from implementation of the Recovery Plan and timely recovery of the species.

27.     In assessing the costs of designating critical habitat, the Service improperly aggregated the costs attributable to listing the species and the marginal additional costs attributable to designation of critical habitat. The Service failed to separately evaluate the existing baseline costs associated with and attributable to the listing of the arroyo toad and the costs associated with and attributable to designation of specific areas of habitat as critical habitat. The costs improperly attributed to designation of critical habitat which would be incurred based on listing of the species alone include, but are not limited to, costs of preparing HCPs, costs of complying with the ESA, and costs of complying with local and State regulations regarding endangered species. In assessing the costs of designating critical habitat, the Service also improperly included economic impacts attributable to: other local and State land use and environmental regulations; speculative costs such as delay, uncertainty, lost economic efficiency; and speculative changes to water supply operations and management.

28.     The Service violated Section 4(b)(2) of the ESA because it failed to undertake a reasoned analysis in making its determination of whether the costs of critical habitat designation outweighed the benefits. Plaintiff is informed and believe and based thereon allege that the Service weighed the costs and benefits of critical habitat designation on a Unit by Unit basis. Plaintiff is informed and believe and based thereon allege that the Service excluded all Units where it found that the costs exceeded a $10 million threshold. The Proposed Rule states that the 23 Units were designated "generally based on geographically distinct river basins." 69 Fed. Reg. 23,259. The use of a $10 million across-the-board threshold per Unit was arbitrary and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                                                    11

capricious because the Service failed to take into account whether the critical habitat proposed in each Unit is necessary to the conservation of the species and/or whether the total aggregate amount of critical habitat designated is sufficient to ensure conservation of the species.

29. The Service has already stated publically that it "believes the final critical habitat designation should be revised." November 23, 2007, Letter to Nick J. Rahall, II, Chairman, Committee on Natural Resources, House of Representatives. Because the critical habitat designation is invalid, the Service is in violation of the ESA.

## V. CLAIM FOR RELIEF

30. Plaintiff incorporates herein by reference each and every allegation set forth in this Complaint as if set out in full below.

31. Defendants failed to issue a legally sufficient critical habitat designation for the arroyo toad, in violation of Section 3 and Section 4 of the ESA. 16 U.S.C. §§ 1532(5)(A) and 1533(a)(3)(A). Defendants relied in an invalid regulatory definition of adverse modification of critical habitat in concluding that designating critical habitat for the arroyo toad would have little to no benefit for the species, and Defendants' assertion that the economic benefits of designating critical habitat of a listed species are insubstantial is not based on the best scientific and commercial data available and is contrary to law. Defendants' violations include, but are not limited to: improperly basing their decision on the faulty legal premise that habitat which requires special management should not be designated as critical habitat; failing to rely on the best scientific and commercial data available in determining the extent of essential habitat and designating critical habitat; improperly relying on an invalid regulation; failing to quantify and analyze the economic and other benefits of designating critical habitat for the arroyo toad; improperly attributing costs associated with listing the species and other costs to the designation of critical habitat; improperly including speculative costs; relying on unsupportable assumptions concerning the economic impacts of such designation; and failing to perform the required balancing in accordance with Section 4(b)(2) of the ESA by setting an arbitrary threshold for designation based on the costs of designating each Unit which has no basis in law or science. 16 U.S.C. § 1533(b)(2).

32. Defendants failed to provide meaningful public notice of their intent to designate critical habitat as required by law pursuant to the ESA and APA. ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5); 5 U.S.C. § 553(b), (c). The amount of critical habitat described in the Proposed Rule and the amount of critical habitat designated in the Final Rule differed by over 92%. Plaintiff and the public were not put on notice or given the opportunity to comment on the exclusion of the vast majority of proposed critical habitat for the arroyo toad under Section 4(b)(2) of the ESA. Accordingly, the final action differed sufficiently from the proposed action that Defendants violated mandatory notice and comment requirements under the ESA and APA in reducing the final critical habitat designation for the arroyo toad.

33. For each of the above reasons, and others, Defendants failed perform their non-discretionary duties as required by the ESA, and have acted in a manner that is arbitrary, capricious, and not in accordance with law. ESA § 11(g), 16 U.S.C. § 1540(g); 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment providing the following relief

(1) Declare that Defendants Dirk Kempthorne, Secretary of the Interior, and the United States Fish and Wildlife Service violated the ESA by issuing an inadequate designation of critical habitat for the arroyo toad on April 13, 2005, that fails to provide sufficient critical habitat necessary for conservation of the species;

(2) Direct by injunction that the Secretary and the Fish and Wildlife Service issue a revised critical habitat designation for the arroyo toad which corrects these errors, and which otherwise provides for the conservation of the species, by a date certain;

(3) Declare that 50 C.F.R. § 402.02 is invalid; order the Secretary to vacate and set aside this regulation; and order the Secretary to promulgate a rule defining "adverse modification" in a manner consistent with the ESA by a date certain;

(4) In order to protect the species pending the completion of an adequate critical habitat designation for the arroyo toad, enjoin the Secretary of the Interior and the United States

Fish and Wildlife Service from issuing any incidental take permit, approval, biological opinion, or concurrence pursuant to Section 7 of the ESA, for any actions that may harm the arroyo toad or cause destruction or adverse modification to arroyo toad habitat within all areas of proposed critical habitat published on April 28, 2004, consisting of 138,713 acres of habitat, Proposed Designation of Critical Habitat for the arroyo toad (*Bufo californicus*)("Proposed Rule"), 69 Fed. Reg. 23254-23288 (Apr. 28, 2004), including those area that were excluded from designation as critical habitat by Defendants' pursuant to ESA section 4(b), 16 U.S.C. § 1533(b)(2), in the final rule published on April 13, 2005, Final Designation of Critical Habitat for the Arroyo Toad (*Bufo californicus*) ("Final Rule"), 70 Fed. Reg. 19562;

(5) Grant Plaintiff its fees, costs, expenses and disbursements, including reasonable attorneys' fees as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6) Grant Plaintiff such additional and further relief as the Court deems just and proper.

DATED: December 18, 2007

Respectfully submitted,

/s/ Lisa T. Belenky
Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 307
Facsimile: (415) 436-9683

John Buse (CA Bar No. 163156)
CENTER FOR BIOLOGICAL DIVERSITY
5656 S. Dorchester Avenue No. 3
Chicago, IL 60637
Telephone: (323) 533-4416
Fax: (610) 885-2187
Email: jbuse@biologicaldiversity.org

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 145717     - BH

December 19, 2007
12:01:58

Civ Fil Non-Pris
USAO #.: 07CV2380 CIVIL FILING
Judge..: JEFFREY T MILLER
Amount.:                    $350.00 CK
Check#.: BC# D3005724

Total-> $350.00

FROM: CIVIL FILING
      CENTER FOR BIOLOGICAL DIVERSIT
      V. U.S. FISH & WILDLIFE SERVIC

ORIGINAL

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

FILED 07 DEC 19 PM 12:00

'07 CV 2380 JM AJB

DEPUTY

BY FAX

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CENTER FOR BIOLOGICAL DIVERSITY

### DEFENDANTS
UNITED STATES FISH AND WILDLIFE SERVICE and DIRK KEMPTHORNE, Secretary of the Interior,

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Lisa T. Belenky, Center for Biological Diversity, 1095 Market St., Suite 511, San Francisco, CA 94103, (415) 436-9682 x 307

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Endangered Species Act, 16 U.S.C. §§ 1531-1544
Brief description of cause:
challenge to inadequate critical habitat designation for the arroyo toad

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 0.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  12/18/2007
SIGNATURE OF ATTORNEY OF RECORD  /s/ Lisa T. Belenky

**FOR OFFICE USE ONLY**
RECEIPT # 145717   AMOUNT $350  12/19/07 BH   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____